Filed 5/21/25  P. v. Mendoza CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B333579 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. VA150959 |
| v. | |
| CARLOS MENDOZA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Nicholas J. Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Two juries convicted a gang trio of murdering a rival. This appeal, Carlos Mendoza's, is the third appeal arising from the shooting. Mendoza raises two forfeited issues: one concerns the Racial Justice Act (Stats. 2020, ch. 317, § 1) (the Act), and the other is a sentencing issue. We affirm. Code citations are to the Penal Code.

We need not dwell long on the facts due to the nature of the disposition. We recently set out the facts in our opinion addressing the appeal of Mendoza's codefendant, Robert Medrano. (See *People v. Medrano* (Feb. 13, 2025, B332155) [nonpub. opn.] (*Medrano*).) We incorporate those facts here.

Mendoza and Medrano had a joint trial. This trial, and the earlier trial of their other codefendant, Daniel Frias, centered on recorded statements made by Frias to informants posing as inmates as part of a of a *Perkins* operation. (See *Illinois v. Perkins* (1990) 496 U.S. 292 (*Perkins*).) Frias admitted shooting someone he thought was a gang rival as payback for getting pistol-whipped and carjacked the day before. Frias said Medrano and Mendoza (known as Blanco and Downer) helped him plan and carry out the shooting. (See *Medrano, supra*; *People v. Frias* (Oct. 23, 2024, B329215) [nonpub. opn.].) Video and ballistics evidence and witness testimony supported Frias's jailhouse statements. (*See Medrano, supra.*)

At the conclusion of Mendoza's and Medrano's trial, the jury convicted both men of second degree murder (§ 187, subd. (a)), convicted Mendoza of possessing a firearm as a felon (§ 29800, subd. (a)(1)), and found true a personal use firearm allegation as to Mendoza (§ 12022.53, subd. (b)).

The trial court sentenced Mendoza in September 2023, after finding he had a prior strike conviction. (See §§ 667, subds.

(b)-(i), 1170.12.)  The court denied the defense request to strike the strike and stay the enhancement.  On the murder count, the court sentenced Mendoza to 30 years to life—15 years to life doubled due to the strike.  The court added 10 years for the firearm enhancement for a total sentence of 40 years to life in prison.  The court stayed the sentence on the second count.

I

Mendoza first claims that conducting a *Perkins* operation with a Latino suspect using informants posing as Latino gangsters violated the Act.  He argues the trial court then violated the Act by admitting the recording and by allowing expert testimony to "explain Latino gang culture."  He appears to claim the gang expert violated the Act by using "racial stereotypes and racially biased language."

Mendoza forfeited these claims by failing to raise them at the trial court.  Traditional forfeiture rules govern claims under the Act.  (*People v. Lashon* (2024) 98 Cal.App.5th 804, 812, 815 (*Lashon*); *People v. Corbi* (2024) 106 Cal.App.5th 25, 38–42 (*Corbi*).)

Mendoza maintains he preserved his claims because defense counsel objected to the admission of gang evidence and the *Perkins* statements based on Assembly Bill No. 333 (2021-2022 Reg. Sess) (Stats. 2021, ch. 699) (Assembly Bill 333) and based on various federal constitutional amendments.  This argument is mistaken.

Assembly Bill 333 concerned gang enhancements and the crime of gang participation.  It did two key things:  1) it altered the requirements for this crime and these enhancements, increasing the threshold for conviction and for imposing the enhancement; and 2) it added section 1109, which, on defense

3

request, requires bifurcation of these gang charges. (See *People v. Burgos* (2024) 16 Cal.5th 1, 7, 9.) Our Supreme Court has recognized that "the legislative findings accompanying Assembly Bill 333 reflect significant concerns about gang enhancements in general, including about their usefulness in stemming crime and their disproportionate impact on people of color in particular" but also that "gang evidence may still be admissible where relevant to the underlying charges." (*Id.* at pp. 19 & 25, fn. 8; see also *id.* at p. 23.)

Mendoza's trial involved no gang charge or enhancement. At the trial court, the defense objected that gang evidence was unduly prejudicial and irrelevant, and admitting it circumvented Assembly Bill 333. Counsel expressed concern regarding "bringing in gang evidence when there is no gang allegation": "when juries hear gang, they tend to become concerned about things other than the evidence." The defense also argued the *Perkins* statements were unreliable and admitting them would violate the Sixth Amendment and other federal law. Counsel focused on an asserted imbalance between the two older informants and young Frias and on how the informants conducted the operation. Mendoza concedes no one mentioned the Act.

The Act became law in *January 2021*, two years before Mendoza's trial. It aims to eliminate racial bias from our criminal justice system and to ensure race plays no part in convictions and sentencing. (See *People v. Wilson* (2024) 16 Cal.5th 874, 944–946; § 745, subd. (a).) Subdivision (a) of the statute lists categories of conduct that amount to violations, if proved by the defendant by a preponderance of the evidence. (§ 745, subd. (a).) The Act aims for swift and effective action in

4

addressing racial bias "as soon as practical upon a defendant learning of an alleged violation[.]" (*Lashon*, *supra*, 98 Cal.App.5th at p. 815.)

Mendoza says two categories of prohibited conduct are at issue:  a judge, law enforcement officer, or expert witness exhibited racial bias or animus towards him; and his trial featured racially discriminatory language, meaning language appealing to racial bias.  (See § 745, subds. (a)(1) & (2), (h)(4).)

Trial objections based on prejudice, relevance, reliability, and a bill on gang enhancements did not put the trial court on notice that Mendoza was levelling claims of racial bias or use of discriminatory language against the detective who initiated the *Perkins* operation, against the gang expert who testified about Mendoza's gang and its rival, or against the trial court who admitted this evidence.  The charge of bias or animus, or of appealing to racial bias, is distinct from the objections made at trial, and it was incumbent on defense counsel to raise these issues then if counsel felt there was any merit.  (See *Corbi*, *supra*, 106 Cal.App.5th at pp. 43–44 [defense objections that prosecutor's comments were "improper" and inflammatory were insufficient to preserve the claim that the remarks violated the Act, "a distinct statutory scheme with enumerated procedures and remedies"].)

Mendoza urges us not to find forfeiture, suggesting we would deprive him of a substantial right and there is no forfeiture with important issues of constitutional law.  *Lashon* rejected a similar argument.  (See *Lashon*, *supra*, 98 Cal.App.5th at pp. 815–816.)  Mendoza's belated claims under the Act are not constitutional ones and do not involve pure questions of law that are appropriate to address without further factual development.

*Lashon* also rejected another argument Mendoza makes: that objecting would have been futile.  (See *Lashon, supra,* 98 Cal.App.5th at p. 816.)  Mendoza similarly fails to demonstrate an objection would have been futile.  His argument is based on the faulty premise that "identical principles" underlie Assembly Bill 333 and the Act.  Contrary to Mendoza's arguments, and as we have explained, the defense objections did not describe the substance of the violations of the Act claimed on appeal, and the issue of bias was never litigated.  (See *People v. Partida* (2005) 37 Cal.4th 428, 438 (*Partida*) ["to the extent defendant asserts a different theory for exclusion than he asserted at trial, that assertion is not cognizable"].)

Mendoza alternatively claims his trial counsel was ineffective in not raising the Act.  This claim requires Mendoza to show deficient performance by counsel and prejudice.  (See *People v. Jasso* (2025) 17 Cal.5th 646, 675.)  On direct appeal, we find ineffective assistance only if 1) the record shows counsel had no rational tactical purpose for the challenged act or omission, 2) counsel was asked for a reason and failed to provide one, or 3) no satisfactory explanation could exist.  (*Ibid.*)  It is rare to find no conceivable tactical purpose for counsel's actions.  (*Ibid.*; see also *id.* at 695 ["the appellate record usually does not reveal information sufficient to evaluate counsel's performance"].)

Mendoza cannot carry his burden.  Indeed, he does not address whether a reasonable explanation could exist for not raising each of the Racial Justice Act claims he brings now.

Mendoza's trial counsel had studied the *Perkins* transcript: he took issue with certain comments by Frias and the informants, and he argued the statements as a whole were unreliable given Frias's youth and the jail setting.  Counsel could have determined

that an additional objection under the Act was meritless because the detective who set up the operation simply sought to get Frias to talk and because there was no factual basis for asserting this detective harbored racial bias or animus against Frias or others. Mendoza offers nothing to undermine this conclusion.

Similarly, Mendoza's trial counsel reasonably could have concluded the evidentiary rulings concerning the *Perkins* statements and the gang evidence were sound and free from bias, and the expert's testimony appropriately explained the evidence.

Mendoza's first appellate claim fails.

II

Mendoza's second appellate claim concerns Senate Bill No. 81 (2021-2022 Reg. Sess.), which took effect on January 1, 2022. This bill added subdivision (c) to section 1385. The provision requires trial courts to give great weight to mitigating circumstances when considering dismissing an enhancement that is not necessary for public safety. (*People v. Walker* (2024) 16 Cal.5th 1024, 1028; § 1385, subd. (c).) The onus is on the defendant to provide evidence of applicable factors. (See § 1385, subd. (c)(2).)

The trial court sentenced Mendoza in September 2023, a year and a half after these changes took effect.

Mendoza claims the trial court was unaware of amended section 1385. He argues several factors under the amended statute are applicable or potentially applicable, yet the court did not apply them or mention public safety when considering his enhancement ahead of sentencing.

Mendoza forfeited this attack on his sentence by failing to raise this issue or any potentially applicable mitigating circumstance at the trial court. (See *People v. Scott* (2015) 61

7

Cal.4th 363, 406 [absent an objection at trial, a defendant may not raise appellate claims involving the trial court's failure to make or to articulate discretionary sentencing choices]; see also *Partida, supra*, 37 Cal.4th at p. 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"].)

The record signals the court was aware of amended section 1385. Before Mendoza's sentencing, the prosecution filed a sentencing memorandum telling the court it had discretion to strike or to dismiss the firearm enhancement under section 1385. At the September 2023 sentencing hearing, Mendoza's counsel asked the court to stay his enhancement and strike the strike. The trial court stated it had read the prosecution's memorandum and the probation report. The court discussed Mendoza's strike and his lengthy criminal history afterward, noting Mendoza "continued to obviously engage in a violent, persistent gang lifestyle." The court also discussed the facts of this murder case, noting Mendoza's role was "not de minimis." The court stated it had the ability to strike or stay the firearm enhancement but declined to do so, noting Mendoza "was engaged in a gang-related retaliation against an individual at his home, and he acted as an aid[er] and abetter and a lookout to the murder . . . he was clearly armed at the time, and he just didn't have it in his pocket. He used that firearm while he was waiting out in front of the house that the victim was killed in."

The trial court appeared to ground its decision to keep the enhancement in concerns about Mendoza's persistent violence and thus public safety. We presume the trial court knew the law and followed it, in the absence of a record showing otherwise. (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; see also *People v.*

8

*Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary"].)

Mendoza does not argue ineffective assistance of counsel this time, which is wise, as defense counsel's failure to raise amended section 1385 and various factors listed therein appears rational.

Mendoza points to four factors on appeal:

- Subdivision (c)(2)(A):  Mendoza inadequately supports the claim that application of his firearm enhancement would result in a discriminatory racial impact under the Act.  The only relevant provision of the Act for purposes of this subdivision concerns sentencing (see § 745, subd. (a)(4)), and Mendoza's belated claim under the Act does not concern sentencing.

- Subdivision (c)(2)(C):  On its face, this subdivision applies when "*application of an enhancement* could result in a sentence of over 20 years."  (§ 1385, subd. (c)(1)(C), italics added.)  Mendoza acknowledges he "was already facing a 30 to life sentence" on the murder count "without the 10 year enhancement."  (See Couzens, Bigelow & Prickett, Sentencing California Crimes (The Rutter Group 2024) § 12:11, subd. (F)(3) ["There will be no entitlement to relief unless it is the application of the term for the enhancement that results in a sentence of longer than 20 years"].)

- Subdivisions (c)(2)(D) & (E):  While Mendoza notes his mother tried to tell the court about his birth and upbringing, he points to nothing suggesting his crimes were connected to any mental illness or childhood trauma, as required by these subdivisions.  Mendoza's trial counsel

reasonably could have determined these subdivisions held no promise for Mendoza.

In short, it was reasonable for trial counsel not to raise any factor in amended section 1385 or to demand an explicit ruling on whether Mendoza posed a threat to public safety.

## DISPOSITION

We affirm the judgment.


WILEY, J.


We concur:


STRATTON, P. J.


VIRAMONTES, J.